IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

DIGITAL SIN, INC.,             CASE No. 4:11-CV-00584

    Plaintiff,

v.

JOHN DOES 1-145,

    Defendants.

_____/

### DECLARATION TO REFUTE PLAINTIFF'S DECLARATION OF JON NICOLINI

I, an anonymous John Doe, do hereby declare:

1. I'm over 18 years of age and competent to make this declaration.

2. I have personal knowledge of the facts in this declaration and Plaintiff's declaration from Jon Nicolini, filed on 16 Nov 11 (Document #1-1), concerning the Copyright Enforcement Group (CEG) and their analysis concerning this case.

3. I have also filed three previous declarations (October and November 2011) for cases in the Eastern District of Virginia (Richmond Division), *3:11-cv-00531-JAG (Patrick Collins v. Does 1-58), 3:11-cv-00469-JAG (K-Beech v. Does 1-85),* and the District of Arizona, *2:11-cv-01602-GMS (Patrick Collins v. Does 1-54)* refuting Plaintiff's memorandums.

4. I'm filing this declaration anonymously, as I'm one of the 200,000+ John Doe defendants in the multitude of copyright infringement cases files throughout the U.S. If I were to file this declaration under true name, I feel I would be singled out for vindictive prosecution by my Plaintiff and the network of copyright infringement lawyers that file these types of

cases. The case I was under has been dismissed, but like many other Doe defendants, I'm waiting for the statute of limitation to expire. The declarations I have previously filed, as well as the various motion-templates/examples I make available to Doe Defendants on my Blog (*http://dietrolldie.wordpress.com/*), have cause copyright infringement lawyers more work and the doubtless loss of settlement fees. To prevent identification, I will be mailing this declaration to the court and Plaintiff from a State other than my own.

5. Plaintiff will likely claim I have no standing to make this declaration, as I'm not one of the Doe defendants in this case. I believe I do have standing and valuable information concerning the information Mr. Nicolini provided the court. My standing is based on my direct knowledge of these types of cases and the operations of computer networks, to include small home/office networks, most (if not all) are what Plaintiff has listed as Doe defendants. I have gathered this knowledge first hand by working as a certified Information Technology Specialist, as a Doe defendant, and by running a Blog, dedicated to posting news and views concerning copyright infringement lawyers (AKA: Copyright Trolls) and John/Jane Does. My Blog can be viewed at *http://dietrolldie.wordpress.com/*. While running my Blog, I have corresponded with many Doe defendants who like myself, are being abused by the copyright infringement lawyers who follow this business model.

6. I hope my declaration will aid the Court in making a sound decision about the questionable practices of Plaintiff and other copyright infringement lawyers, to include the omissions by Mr. Nicolini of key Internet Protocol (IP) Addresses information he (and Plaintiff) claim are so indicative of Doe defendant guilt. I thank the court for indulging this John Doe.

7. <u>Response to Jon Nicolini's declaration, paragraph 4.</u>

    Mr. Nicolini states the piracy of movies and music has been a serious problem

since at least as early as the home audio and video tape players became available. Since this time, copyright owners have been repeatedly claiming this activity is killing their industry and that something must be done. In actuality, these overstated and dramatic claims started over a century ago (1906), when the famous composer John Phillip Sousa wrote a letter complaining about player pianos.

> "I foresee a marked deterioration in American music and musical taste, an interruption in the musical development of the country, and a host of other injuries to music in its artistic manifestations, by virtue -- or rather by vice -- of the multiplication of the various music-reproducing machines." [1]

These claims have continued throughout the years, foretelling economic doom and gloom. On 12 April 1982, during a House of Representative subcommittee hearing on the home recording of copyrighted works, Jack Valenti, President, Motion Picture Association of America (MPAA), Inc., gave testimony that the Video Cassette Recorder (VCR) and blank tape was threatening the life-sustaining protections that copyrighting provides. Mr. Valenti went on to make a ridiculous claim that *"the VCR is to the American film producer and the American public as the Boston strangler is to the woman home alone"* [2]

The mainstream music and movie industry has been tackling the problem of copyright infringement for longer than the adult entertainment industry and they are still remaining profitable. Their profits have changes from primarily CD/DVD based sales to a combination of CD/DVD and on-line (download) sales. Plaintiff has also adjusted his marketing to provide many adult content movies for immediate download via their video

---

[1] https://www.eff.org/deeplinks/2004/03/wicked-player-piano, *The Wicked Player Piano, 31 Mar 04.*
[2] http://cryptome.org/hrcw-hear.htm, *Home, Recording of Copyrighted Works, House of Representatives, 12 Apr 82*

on demand Web site (*http://digitalsin-vod.com*). This is not to say that copyright infringement is acceptable or the owners should not defend themselves. What is irresponsible of Plaintiff is to file these mass copyright infringement cases as a "cost effective solution" for their problem.

8. <u>Response to Jon Nicolini's declaration, paragraphs 5, 6, & 7.</u>

In these paragraphs, Mr. Nicolini provides background information on the BitTorrent software, its installation, and how Doe defendants had to take active steps to install it on their computers. Mr. Nicolini provides this information but fails to mention the IP address CEG collected does not necessarily correlate to the actual copyright infringer. The IP address CEG collected is only the "Public" IP address an ISP assigns to a subscriber's location. As a majority of residential and small office networks utilize a Wireless (WiFi) Firewall/Router, the systems that connect to it are given an "Internal" IP address (by the Wifi Firewall/Router) that no one outside of the residential network will ever see. These WiFi Firewall/Routers allow multiple wired and wireless connections from computers (some possibility unauthorized); all using the same "Public" IP address CEG has collected. It is irresponsible for Mr. Nicolini to state in his declaration that the ISP subscriber knowingly took part in the illegal download/sharing of a copyright protected movie, at least without making this possibility known to the court.

There have been two recent Federal court filings from named Doe defendants in a similar California copyright infringement cases (*3:11-cv-02766-MEJ, Patrick Collins v. Does 1-2590, Documents 22 and 52*) where an ISP subscriber's Internet connection were abused by unknown/unauthorized personnel.

In document 22, Bobbie Thomas (ISP subscriber), Richmond, CA, tells the court

she is a disabled female who lives with her adult daughter and several in-home care providers. The residence (location of the public IP address) is a three-story building in which her daughter runs a child day care business for 12-hours a day. In the first floor common area, Mrs. Thomas' personal computer and Internet connection were open and available for any of the residents or anyone with access to use.

In document 52, Steve Buchanan (ISP subscriber), Phoenix, AZ, tells the court that unknown personnel were abusing his Internet connection and his ISP had to help him re-secure his Wifi Router. Mr. Buchanan enlisted the help of his ISP after receiving notification from his ISP that copyright protected movies were being shared via his public IP address. Mr. Buchanan eventually secured his Wifi Router and determined the unknown personnel had also illegally accessed his wife's computer and prevented it from connecting to his network.

The unauthorized use of a home Wifi Internet connection led to one Buffalo, NY, family to being investigated for allegedly downloading child pornography. On 7 March 2011, US Immigration and Customs (ICE) agents executed a search warrant for child pornography based only on the subscriber information (public IP address) they received from the ISP. ICE later determined that next-door neighbor had used the Internet connection via the Wifi router.[3]

In July 2011, Barry Ardolf, Minnesota, was convicted of hacking has neighbors (Matt and Bethany Kostolnik) WiFi router, trying to frame them with child pornography,

---

[3] *http://www.huffingtonpost.com/2011/04/24/unsecured-wifi-child-pornography-innocent_n_852996.html*, *Innocent Man Accused of Child Pornography After Neighbor Pirates His WiFi*, 24 April.

sexual harassment, and even sending threading emails to Vice President Joe Biden.[4] Mr. Ardolf used freely available software and manuals to hack the Wired Equivalent Privacy (WEP) protecting the neighbors WiFi router. Due to the threatening emails sent to the Vice President, the US Secret Service contacted Mr. Kostolnik based on the email and public IP address. Mr. Kostolnik was eventually cleared of these allegations after it was determined Mr. Ardolf hacked their WiFi router. Mr. Ardolf was eventually sentenced to 18 years in prison (*case 0:10-cr-00159-DWF-FLN, USDC, District of Minnesota*).[5]

9. <u>Response to Jon Nicolini's declaration, paragraph 10.</u>

In paragraph 10., Mr. Nicolini informs the court the "system" used to collect the evidence of alleged infringement was conceptualized, developed, and maintained by him. This minimal information provided by Mr. Nicolini does not allow for the court to determine the true nature of the "system," as well as if it has any error rates leading to false-positive identification of alleged infringers. It should also be noted by the court that Mr. Nicolini has not provided any information concerning the technical certifications of the "systems" or the evidence collection agents, to include him. The technical certifications of Mr. Nicolini should be of particular concern to the court, as he failed to provide the court the relevant information concerning the "public" IP address CEG collected and its limitation in identifying alleged infringers.

10. <u>Response to Jon Nicolini's declaration, paragraphs 18. and 19.</u>

In paragraph 18., Mr. Nicolini states the 145 public IP addresses they collected

---

[4] *http://www.networkworld.com/news/2011/071311-wifi-hack.html*, "Depraved" Wi-Fi hacker gets 18 years in prison, *13 Jul 11*.
[5] *http://www.wired.com/images_blogs/threatlevel/2011/07/ardolffedssentencingmemo.pdf*, Government's Position With Respect to Sentencing, 14 Jul 11.

(Exhibit A to the complaint) all took part in the same transaction of illegally downloading/sharing Plaintiff's copyright protected movie. Even though Plaintiff limited the time-frame of their collection efforts to the month of September 2011, there is no information to say ALL the public IP addresses took part in the same swarm for the entire month of September 2011. Mr. Nicolini states that "timestamp" column in Exhibit A shows the last time the public IP address was observed sharing the movie. The public IP address associated to John Doe # 2 stopped sharing the movie on 1 September 2011; the public IP address associated with John Doe #17 stopped sharing the movie on 30 September 2011. There is nothing to show that these two public IP addresses were ever part of the same swarm, only that they had once shared the same movie. Exhibit A to the complaint does not show when each of the public IP addresses first started to share the movie file. This information is key to determining the proper joinder of the Doe defendants.

In the January 2011 Technical Report: *An Estimate of Infringing Use of the Internet*, by *Envisional*[6] (a major company specializing in detecting and guarding against the threats of counterfeiting, piracy, fraud and online brand abuse), the following was noted for the single day analysis of BitTorrent use:

> For the 2.72 Million torrents identified, only .2% had 100 or more downloaders. 2.6% of the torrents had 10-99 downloaders. 51.9% of the torrents had from one to nine downloaders. 45.2% had no active downloads. Envisional also noted that a similar spread of "seeders" (users with a complete copy of the work) were associated with the torrents. For 48.5% of the torrents, there were no seeders connected. (Page 9)

This report clearly shows the vast majority of torrents only had zero to nine

---

[6] http://documents.envisional.com/docs/Envisional-Internet_Usage-Jan2011.pdf

downloaders associated with them and a very limited number of file seeders at any one instance. <u>Only .2% of the torrents had 100 or downloaders and similar numbers of seeders at any one time</u>.

The nature of BitTorrent is that a file is first made available to other BitTorrent users by a small number, usually one public IP address. As other BitTorrent users join and start to download/share the work, the swarm grows. Depending on how popular the work is, the swarm can grow fast, or not at all. Eventually as the popularity of the shared work drops, the swarm shrinks, and eventually disappears. Public IP addresses from the U.S. and around the world commonly join and leave various BitTorrent swarms at all times during the life of the torrent. It is not unusual for some public IP addresses to be attached to a swarm for less than a single day.

Discussions of the technical details of the BitTorrent protocol aside, the individual Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no claim that the movie CEG downloaded came jointly from specific public IP addresses (Doe defendants). Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here. Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country.

In paragraph 19., Mr. Nicolini makes the erroneous statement, "*As indicated above, an Internet Protocol address uniquely identifies each computer connected to the Internet.*" As previous stated the IP address CEG recorded is only the public one provided

to the ISP subscriber and is NOT unique to a specific computer. In fact, the common use of a Wifi Firewall/Router at a residence hides the multiple internal computer systems, smartphones, game systems, and other Internet enabled devices that use this same public IP address. Examples of why the registered IP subscriber did not illegally download/share the copyright protected movie are:

   a. Home Wifi access point run open (like at an airport or coffee bar) and abused by a neighbor or other unknown person.
   b. Guest at the residence abusing the Internet connection without the owner knowing.
   c. IP address is part of a group residence (roommates), apartment building, or small home business where the IP owner did not illegally download/share copyright protected movie.
   d. Home system infected by a Trojan Horse malware program and controlled by unknown personnel.

Without additional investigative steps, innocent personnel are bound to be implicated in infringement activity and pressured to pay settle amounts to make the threat of a federal law suit go away.

One earlier court noted the problem with this strategy of only using the IP address to identify the alleged infringer:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants. *BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)* (severing lawsuit involving 203 defendants).

11. Response to Jon Nicolini's declaration, paragraphs 25. and 26.

In paragraph 25., Mr. Nicolini states they have made "every" effort to ensure all

the alleged infringers are properly joined. This statement is incorrect as can easily be validated by the very weak investigation Plaintiff and Mr. Nicolini has conducted in an effort to obtain subscriber information via a subpoena.

In paragraph 26., Mr. Nicolini states that without knowing the true identities of the ISP subscribers, the complaint cannot be served on the defendants. In the overall majority of the mass copyright infringement cases being filed in the U.S., the Plaintiffs have no intention of serving summons on defendants or even taking them to actual trial. I'm one of these defendants where my subscriber information was released via a subpoena, settlement demands were made, I didn't settle, and Plaintiff dismissed the case after keeping it open for more than a year. In a recent order (1 December 2011), Judge Maria-Elena James, Northern District of California (*case # 3:11-cv-02766-MEJ, Patrick Collins v. Does 1-2590*), commented on this practice.

> Since granting Plaintiff's request, a check of the Court's docket disclosed that no defendant has appeared and no proof of service has been filed. Further, the Court is aware that this case is but one of the many "mass copyright" cases to hit the dockets of federal district courts across the country in recent months. Like in this case, after filing the suit, the plaintiff seeks discovery from ISPs who possess subscriber information associated with each IP address. With the subscriber information in hand, the court is told, the plaintiff can proceed to name the defendants in the conventional manner and serve each defendant, so that the case may proceed to disposition. This disposition might take the form of settlement, summary judgment, or if necessary, trial. In most, if not all, of these cases, if the plaintiff is permitted the requested discovery, none of the Doe defendants are subsequently named in the cases; instead, the plaintiff's counsel sends settlement demand letters and the defendants are subsequently dismissed either by the Court or voluntarily by the plaintiff.

12. Conclusion

To provide the court more identifying information than the public IP address, Plaintiff would have to do some type of investigation. It is much easier for them to collect

public IP addresses and seek a subpoena for the subscriber information. Once subscriber information is obtained, Plaintiff knows they are about to see the money come to them. As can be seen by the screen shots from an adult movie Webmaster board, "GFY.COM" (Exhibit A), an adult content copyright owner and a well-known copyright infringement lawyer post some information concerning their activities. The copyright infringement lawyer John Steele (Steele|Hansmeier, PLLC; now of Prenda Law Inc.), posts that it does not cost the copyright owner any money to take this legal action with him. The copyright infringement lawyer handles all the costs up front and they split the profits from the operation. The copyright owner, Robbie, states it is a 60/40 split in his favor and states "*Piracy is turning out to be a nice little revenue stream*," as well as "*And it's padding my bank account.*" Robbie also states they set the settlement fee right at the point where it costs the Doe defendant more to fight than settle. A further disturbing point is made by Robbie that in addition to costing the doe defendant more to fight, they will have the added bonus of "*your wife, kids, neighbors, co-workers, etc. finding out ALL your dirty little porn habits that you want to keep private.*" This clearly shows that the Plaintiffs and the copyright infringement lawyers care nothing about possibly implicating innocent people in these allegations. If they admit that their evidence collection methods are not 100% effective all the time, they have to admit that some of the Doe defendants are innocent. As they will not do this and risk losing potential settlement fees, they threaten all the Doe defendants with a federal law suit for downloading/sharing copyright protected pornography. This threat of financial ruin, family and friend embarrassment, a convenient settlement option, and non-disclosure agreement, make it easy for even innocent people to possibly accept paying the settlement fee of a couple thousand dollars. If Plaintiff is able to obtain the settlement fee of $3,000.00 from

50% of the Doe defendants in this case, they will make approximately $217,000.00. This activity is part of Plaintiff's never-ending cycle of revenue generating law suits and non-disclosure settlement agreements. The fact that a majority of Federal civil cases are settled before trial should not be the justification basis for granting mass subpoenas against Doe defendants to obtain ISP subscriber information. Plaintiff and the growing number of copyright infringement lawyers are abusing the court for their financial gain. I thank the court for hearing this declaration.

Dated: 12/13/2011                                     Respectfully submitted,

*John Doe*
John Doe, AKA: DieTrollDie
*Blog: http://dietrolldie.wordpress.com*
*Doerayme2011@hotmail.com*

# EXHIBIT A

story  Bookmarks  Tools  Help

http://gfy.com/showthread.php?s=4331131d2883846747276816483342ab6&p=17495985#post17495985

Getting Started    Latest Headlines

| lhtspeed, Grooby F... x | XBIZ NEWs: Lightspeed, Grooby File... x | ✦ |

Copyright Infringement is always a crime but fair use is never a Copyright Infringement 😊

don't have to pay for a backup service/ extra hard drives etc.

**09-12-2010, 05:29 PM**                                                                                   #299

**johnsteele**
Registered User

Industry Role:
Join Date: Sep 2010
Location: Chicago
Posts: 12

**Hello there**

As the attorney that has filed the actual lawsuits, I can say that most of the negative comments on this post miss the point of what we are trying to do. I wish to make a couple quick points:

1. We are not looking to end piracy. That will never happen.

2. We are trying to get some "lost" money back to content producers on a contingency basis. If my firm is full of idiots that cannot accomplish this task then our clients are not a dime.

3. I am not trying to push this solution on anyone who would rather not pursue illegal downloaders. If a content producer is comfortable with writing off illegal downloads as a cost of doing business, I respect that.

4. With respect to the comment that most down loaders don't know its illegal, I can't help but wonder if that commenter is serious. Besides, ignorance of the law is no excuse.

5. For the 95% of the people on here that think what we are trying to do is a good idea, thanks!

John Steele

Steele | Hansmeier

Quote

**09-12-2010, 05:31 PM**                                                                                   #300

**chronic**

Quote:



09-16-2010, 08:10 AM

**johnsteele**
Registered User

Industry Role:
Join Date: Sep 2010
Location: Chicago
Posts: 12

### Interesting

I do not wish to engage in a tit for tat. And perhaps I am not used to the rough and tumble online blog sites, but:

1. Referring to me as Jewish in a derogatory way is offensive. And someone claiming to be an attorney while posting an anti-semitic rant on a public website is not exactly an authority on proper behavior. I would assume most anti-semite bigots know that Steele is not a jewish name BTW.

2. Referring to down loaders who go through the steps of downloading a bittorrent client, going to a bittorrent site, downloading an entire movie, and playing it on their computer as "innocent" is simply not credible, IMHO. Maybe a jury would disagree. To paraphrase, John Madden, that's why we go to trial.

3. 99.3% of all bittorrent data shared is illegal according to one study.

4. We work on contingency, which means that we have NEVER received a dime from Steve Lightspeed nor any of our clients. Not sure how I could "take their money".

5. Federal Court is a bit different than a church. I would submit that federal judges do not have a separate set of constitutional rights for Plaintiffs depending on a judge's moral beliefs. Too many bad movies out there created this misconception.

6. Violating a copyright is wrong. You can justify anything, from speeding to illegal copyright infringement. But thankfully in the court of law, excuses do not rise to affirmative defenses. That is why the US's criminal conviction rate is over 95%.

7. I am no expert on all things related to porn, but I find it hard to believe that a 'tube' site that has hundreds or thousands of copyrighted items placed on their site every day is receiving advice from the 'top anti-piracy law firm in the country' that everything is a-ok. If so, I am mistaken.

I do not wish to insult or attack anyone on this site and I am only giving my thoughts on these issues.

story  Bookmarks  Tools  Help

http://gfy.com/showthread.php?t=985302&page=2

Getting Started | Latest Headlines

htspeed, Grooby F... × | XBIZ NEWS: Lightspeed, Grooby File... × | +

■ 09-04-2010, 10:21 AM #81

**Robbie**
Too lazy to set a custom title



Industry Role:
Join Date: Aug 2002
Location: Vegas
Posts: 10,656

Quote:
> Originally Posted by **DamianJ**
> *Actually the RIAA STOPPED attempting to sue the individuals they claim were sharing files, back in 2008 because it was costing too much time and generating a huge loss for them.*

Fortunately it's not that way at all for us. Since porn is still "bad", it's been very, very easy to get this done. Folks don't want to be "outed" for their porn habits. When they get these letters from our attorneys they pay up quick.

And it doesn't cost me a dime and there is no "loss". Only profit. We are doing a 60/40 split with the attorneys. I get 60. We set the settlement fee at exactly the price point that it will cost the person more to fight than to settle.

This ain't that hard and it's making me back the money I've lost over the last couple of years. And it's going to start happening a lot.

When you get that letter from my attorney you'll have the choice of getting your own attorney and facing us in court...which is more expensive than paying the settlement. And if you fight it, it's not only gonna cost you more money...but it's going to give you the nice extra bonus of your wife, kids, neighbors, co-workers, etc. finding out ALL about your dirty little porn habits that you want to keep private.

Watch as everyone gets on board with this. If you are a content producer, you need to be doing this too. It's so simple and so effective it's ridiculous. And you are not out of pocket one thin dime. It's all profit.

-Robbie
Claudia-Marie.Com
SOLO SLUT CASH

Quote

■ 09-04-2010, 11:01 AM #82

**selena**
Registered User

Robbie has an excellent point in that downloading porn is something that most people won't want broadcast. Even though on the surface porn seems to be more accepted in the mainstream world in the past, to a huge portion of America, it is still for perverts. And there is a world of difference in being outted for illegally obtaining the new Katy Perry tune and being outted for d/l'ing a copy of "Barely Legal Schoolgirl in Midget Tranny Bukake Paradise".

It's hush money, and I LOVE it.



🔲 09-04-2010, 03:31 AM                                              #41

**Robbie**
Too lazy to set a custom title

Industry Role:
Join Date: Aug 2002
Location: Vegas
Posts: 10,657

> Quote:
> Originally Posted by **marketsmart**
> *no they are not...*
> 
> *although i support your cause, you obviously have now idea how this works..*
> 
> *your efforts would be better spent producing new content and protecting it....* 😊

No, you're wrong.

I'm currently making a 60/40 split on nailing surfers uploading our stuff. Piracy is turning out to be a nice little revenue stream after all. GroobyBucks and Lightspeed are following in the footsteps of a few others who have now figured out how to put a hurt on it.

I'm the one laughing all the way to the bank. The 60/40 split with the lawyers is nice for me. Way better than watching assholes make 100% with stolen content for damn sure. And it's padding my bank account. 😁

-Robbie
Claudia-Marie.Com
SOLO SLUT CASH

[ Quote ]

🔲 09-04-2010, 03:53 AM                                              #42

**Dirty Dane**
Registered User

That's great Steve. Good luck with it.

## CERTIFICATE OF SERVICE

      I hereby certify that on 12/13/2011, I served a copy of the foregoing document, via US Mail, on:

**Transnational Law Group, LLC**
Terik Hashmi
429 Lenox Avenue, Suite 5C13
Miami Beach, FL 33139

Dated: 12/13/2011                                                Respectfully submitted,

                                                                                   *John Doe*
                                                  John Doe, AKA: DieTrollDie
                                                  *Blog: http://dietrolldie.wordpress.com*
                                                  *Doerayme2011@hotmail.com*

                                                 711 Torpedo Way
                                                 Liberty Hill, TX 78642